# ÁLMUS AKELY *v.* THOMAS AKELY.

## IN CHANCERY.

The degree of uncertainty, required to avoid an award of arbitrators, is the same required to avoid any contract;—that is, such as would leave the meaning of the arbitrators *wholly in doubt.*

To render an award sufficiently *final,* it is necessary that the matter submitted should be fully decided, and that it should appear intelligibly by the award what the decision was.

An award concerning the title of land, if made upon a submission under seal, and in pursuance of the submission, is as much binding upon the parties as

Akely *v.* Akely.

any contract under seal, made upon the same subject, and between the same parties.

Such award is as binding upon the parties as if signed and sealed by them; since the arbitrators are, for this purpose, constituted by the submission the agents of the parties.

When a submission, concerning the title of lands, is made and sealed by the parties, and an award is made in writing under the hands and seals of the arbitrators, a court òf chancery will decree a specific performance of the award, the same as they would of a contract respecting the same subject matter, and to the same effect, signed and sealed by the parties to the submission.

It is not necessary that such award should have been ratified or confirmed by the parties, in order to justify the court in decreeing a specific performance of it.

APPEAL from the court of chancery.  The bill stated that the orator had contracted to support the defendant during his natural life; and that the defendant at the same time executed to the orator deeds of certain lands,—among which was a deed of fifty acres of land, on which the defendant then resided, to which deed was appended a condition that the orator was not in any way or manner to come into possession of the said fifty acres, until after the decease of the defendant; but the bill stated that the condition was inserted for the purpose, merely, of gratifying the defendant, and that his support might be more secure; and that it was understood at the time that the orator was to take immediate possession of said fifty acres; and that he did go into immediate possession thereof.

The bill further set forth, that, a difference having arisen between the parties as to the title, right of possession and occupancy of said fifty acres, and also as to the then future support of the defendant, as well as his past support, the parties, by an instrument under their hands and seals, which was acknowledged by them before a justice of the peace, submitted all matters in controversy between them to three arbitrators, and thereby agreed to perform their award, "whatever might be its requisitions."

That the arbitrators awarded, by award in writing under their hands and seals, that the defendant should " quitclaim to the said

Akely *v.* Akely.

Almus Akely all his right and title to all his lands which he had heretofore deeded, or attempted to deed to said Almus;" and that the orator should pay the defendant $100 per year, for his future support, and secure the payment thereof by mortgage on said fifty acre lot. And that the orator had offered and was ready to perform his part of the award; but that the defendant had refused to accept said performance, or to perform on his part. The orator prayed that the defendant might be decreed to execute to the orator a deed of the premises.

The admissions in the answer of the defendant, and the testimony taken by the parties, sustained the material allegations in the bill, as above set forth. The defendant claimed in his answer, that the deed of the fifty acre lot, executed by him to the orator, was void, as being to take effect *in futuro*, and that the decision of the arbitrators was contrary to law. It appeared, that, at the time the award was declared by the arbitrators, the defendant expressed his determination not to perform it,—and that he had never subsequently ratified or recognized it.

After a hearing on bill, answer, and testimony, the court of chancery ordered that the bill be dismissed, and that the defendant recover his costs.

*Asa Keyes* for orator.

1. The deed from the defendant to the orator of the fifty acre tract was technically a covenant to stand seized, and not inoperative, as a deed to commence *in futuro*. *Jackson* v. *Sweat*, 20 Johns. 85, Co. Lit. 49 *a*. *Wallis* v. *Wallis*, 4 Mass. 135. *Pray* v. *Pierce*, 7 Mass. 384. But the parties probably understood this as a deed absolute to the orator,—for he was put into immediate possession, and ever after continued in possession until the present difficulty arose,—and that the defendant had a claim thereon for his support.

2. The submission having been general,—of all demands,—the arbitrators had jurisdiction of the law, as well as of the fact. 2 Story's Eq. 677, and cases there cited.

3. But an objection is made, that Thomas Akely did not assent to the award after publication, and that therefore specific performance cannot be enforced; —and such would seem to be the law, if we were to take it from Caldwell and Kyd; for they say, in so many

words, that, when the arbitration is entirely the act of the parties, there must be an acquiescence in the award, a part performance, or proof of some subsequent agreement to have it executed. Story is more cautious in stating the principle. He says, courts of equity will, in proper cases, enforce a specific performance of an award, which has been acquiesced in by the parties, for the performance of acts *in specie*,—as for the conveyance of land. And they cite the same authorities, to wit, *Thomson* v. *Noel*, 1 Atk. 62 ; *Norton* v. *Mascall*, 2 Vern. 24; *Hall* v. *Hardy*, 3 P. Wm's 187; *Wood* v. *Griffith*, 1 Swanst. 54; and Story adds *Bouck* v. *Wilber*, 4 Johns. Ch. R. 405. But none of these cases support the position taken, for they were all decided on other principles. Indeed in *Norton* v. *Mascall* there was no subsequent agreement, or acquiescence, or part performance, but only an offer to perform,—as in the case now on trial. This case is a direct authority in favor of our present application.

How then shall we account for the occasional *dicta* of the judges, scattered through the ancient reports? During the existence of the military tenures in England real estate was not the subject of arbitration, and this upon feudal principles. Kyd on Awards, and cases cited. It was at length held, in the time of Coke, that, although an award of the realty was no bar to an action to recover the same lands, yet, if the party would not perform the award, his bond, if he gave one, was forfeit. 1 Roll. Rep. 270. Kyd on Awards 59. And in 1 Ld. Raym. 115, POWELL, J., said—" It is a question whether the title to land is submissible, since it is in the realty;" but TREBY, CH. J., said " things in the realty may be submitted, but that they could not be recovered on the award."

While these doubts hung over the subject, we should expect the chancellor would refuse to decree a specific performance of awards of the realty, unless there had been an acquiescence, or part performance by the plaintiff, or a subsequent agreement to perform the award. But it is matter of surprise that no case can be found, even in those days, where this question has been directly decided. From the days of Lord Hardwicke to the present time the subject of acquiescence, or subsequent agreement, has scarcely been named in the reports, although contained in the digests. During the time of Vesey, Jr's., reports the specific performance of

Akely v. Akely.

awards was often asked for, but refused, after protracted litigation, on other grounds, when those cases might have easily been disposed of, if the doctrine, here contended for by the defendant, had prevailed. *Cooth* v. *Jackson*, 6 Ves. 12. *Milnes* v. *Gery*, 14 Ves. 400. *Blundell* v. *Brettargh*, 17 Ves. 241. That awards concerning land are legal and binding at the present day is settled by the following cases. *Morris* v. *Rosser*, 3 East. 15. Metcalf & Perkins' Dig., Arbitrament, and cases cited, 221.

That Chancery will decree the specific performance of such awards, without an acquiescence, is shown by *Smallwood* v. *Mercer*, 1 Wash. 290. *Dixon* v. *Morehead*, Addison's R. 216, 231. *Calhoun's Lessee* v. *Dunning*, 4 Dall. 120. 1 Serg. & R. 209. 15 Ib. 171. *Jones* v. *Boston Mill Co.*, 4 Pick. 507. *S. C.*, 6 Ib. 148. 1 Madd. Ch. 401. *Pawling* v. *Jackson*, 6 Litt. R. 1. *McNeil* v. *Magee*, 5 Mason 244. *Wood* v. *Griffith*, 1 Swanst. 54. *Bouck* v. *Wilbur*, 2 Johns. Ch. R. 405.

Again, if, upon principle, an acquiescence, or subsequent agreement, is necessary to the validity of the award, it would seem that the bill should be brought upon the subsequent agreement, which would be a bill for the specific performance of a parol agreement concerning land,—which is void by statute. But the bill is always brought upon the agreement in the submission, the terms of which are ascertained and defined by the award.

*W. C. Bradley* for defendant.

This is the case of a bill brought by a son against his aged father, to compel the specific performance of an award, which the latter has never assented to, nor in any way admited;—which, it is conceived, cannot be done. *Hall* v. *Hardy*, 3 P. Wm's 189, 190. *Thompson* v. *Noel*, 1 Atk. 62. Powell on Contracts, 318–19. Bac. Abr., Arb. & Award I. *Somerville* v. *Trueman*, 4 Har. & McHenry 47. 2 Story's Eq. 680, § 1458. *Norton* v. *Mascall*, 2 Vern. 24. Kyd on Awards 320–323. *Bishop* v. *Webster*, 1 Eq. Ab. 51, sect. 9. The exceptions to this rule are, where the submission is not voluntary, but by order of court; see all the authorities;— where there has been some mistake in drawing up the award; *Bouck* v. *Wilder*, 4 H. R. 407, and 2 Ib. 279;—and where *the agreement is specific* in the submission, and the award is only to

ascertain its *quantum,* or price; Kyd on Awards 126; *Wood* v. *Griffith,* 1 Swanst. 43—54. *Blundell* v. *Brettargh,* 17 Ves. 241, 242. *Smallwood* v. *Mercer,* 1 Wash. 290–295. *McNeil* v. *Magee,* 5 Mason 256; or where, by consent, acquiescence, or lapse of time, non-performance operates a fraud; See all the authorities.

Nor is the agreement to faithfully keep and perform any award, signed and published by the arbitrators, *whatever might be its requisitions,* to deprive us of the right of objection, but, if any thing, is a defect in the submission itself. *Mussina* v. *Hertzog,* 5 Binn. 387. Metc. & Perk. Dig., Arb. & Award, § 471.

The award, being that the defendant should quitclaim to the plaintiff all his right and title to all his lands in Brattleboro and Guilford, "which he had theretofore deeded or attempted to deed" to the said plaintiff, is too uncertain. Kyd on Awards 246, 194–216. *Brown* v. *Hankerson,* 3 Cow. 70. *Waite* v. *Barry,* 12 Wend. 377. Nor is it final, because it leaves an important fact submitted,—viz., what did the defendant 'deed?—still to be ascertained.

Lastly, it is conceived that the plaintiff's case does not furnish sufficient equity to induce this court to interfere in the way of a decree to perform.

The opinion of the court was delivered by

REDFIELD, J. In regard to many points, insisted upon in argument on the part of the defendant, we have not felt much doubt. 1. We have no doubt that the submission of all matters of difference between the parties was intended to include the disposition of the title to this very land. 2. We believe that question was *litigated* before the arbitrators. 3. We have no doubt the award refers to *this* land, and no other.

2. There is no doubt, that, according to the practice of the courts of chancery, the disposition of all bills for the specific performance of contracts is, to some extent, discretionary with the chancellor. If the contract is imperfect, or unequal, or if, from any other cause, the carrying it into effect would not subserve the fullest ends of justice, a decree will be refused. And in this case, no doubt, if we were casting about for some plausible excuse for dismissing the bill, we might seize upon some possible uncertainty

in the award, and so might we in every case of an award made by unprofessional hands.   But we do not think there is here any possible necessity of dismissing the bill, for any uncertainty in the award ; that is, we do not think the uncertainty is such as to avoid the award.   The degree of uncertainty, to avoid an award of arbitrators, should be such as would avoid any other contract; such as would leave the meaning of the arbitrators *wholly in doubt*.   There is no pretence of any such uncertainty here.   The most that could be said here is, that, if the award were a plea in bar, very likely it might be deficient in certainty on a special demurrer.   But the award here is as certain, as if it had referred to the deed of this very land,—or nearly so, upon the testimony,—for there is no other land, *attempted to be conveyed*, to which it could be referred.

3.   The force of the argument, in regard to the award being final, I do not fully comprehend,—unless by the finality of an award, is meant, that the award must absolutely put an end to all controversy between the parties, and hence this suit is proof positive of the want of the proper degree of finality.   Such a rule would render awards upon all subjects of little avail.   But this is not the rule.   All that is meant by the requisite degree of finality is, that all which is submitted shall be *decided*, and not be left to depend upon some after determination to be made by the parties, or by other arbitrators,—so that one looking into the award would say, " this *ends* the business," and not, " this settles nothing."   Here, 1, The award disposes of the whole matter in controversy ; 2, It does it in a manner sufficiently intelligible, as has been already shown.   We come, then, to that part of the case upon which the most care has been bestowed.

The only question, which has weighed much with the court, is in regard to the propriety of requiring the court of chancery to decree a specific performance of an award of arbitrators, in regard to the conveyance of real estate.   1. We should require them to make such a decree as we should make, had we their powers.   2. We see no good reason why a conveyance should not be decreed in this case, if in any case.   Indeed, the argument on the part of the defendant has gone mainly upon the ground, that, in the case of a naked award of conveyances of real estate, where the defendant has done nothing, nor induced the orator to do any thing, in confirma-

Akely *v.* Akely.

tion of the award, it is not within any known practice of a court of equity to decree the execution of the conveyance, according to the award. We do not see upon what other ground a decree could be resisted in the present case.

We have examined this argument, and the authority upon which it is founded, with labor and patience, and with a sincere desire to come at truth, and the result has been a full conviction of the unsoundness, both of the argument, and the authority.

The authorities are all somewhat early, and are all based upon the principle of feudal law, that the title to real estate cannot pass by award of arbitrators. This principle is recognized in all the early books, and in all history of those times. It is laid down by Mr. Justice Blackstone, 3 Comm. 16, that "the right of real property cannot pass by a mere award," citing 1 Roll. *a b*, 242, 1 Ld. Raym. 115,—which is the case of *Marks* v. *Marriot*, in which TREBY, Ch. J. C. B., says, "Things in the realty could be *submitted*, as well as things in the *personalty*, but they could not be *recovered* on the award." This is either *abstruse*, or exceedingly *insipid*. If it means that the title does not pass, it might have been more clearly expressed; if it only import that the award will be of no force, the first part of the sentence would seem not a little sage, and almost worthy of Sancho Panza in his island of Barataria. But Justice Blackstone adds, "Yet doubtless an arbitrator may *now* award a conveyance or release of land, and it will be a breach of the arbitration bond to refuse compliance."

In a note to Petersdorff's Abridgment, which is in general a book of great thoroughness and accuracy, it is said, "with respect to real property, notwithstanding prior adjudications to the contrary,— Keb. 996, 984; Bro., Abatement, pl. 15; Fitz., Abatement, pl. 16; *Marks* v. *Marriot*, 1 Ld. Raym. 115,—it is now clearly settled that the same rule obtains, [both as to real and personal estate,] and that, where parties may by their own act transfer real property, or exercise any act of ownership with respect to it, they may refer any dispute concerning it to the decision of a third person, who may order the same acts to be done, which the parties themselves might have effected by their own agreement; therefore, when it is stated that an arbitrator cannot make an award of freehold, it must be un-

derstood to mean no more, than that land cannot be transferred by the mere words of an award." 2 Petersdorff's Abr. 99–100 (n.)

This I take to be the true state of the English law upon this subject at the present time. In *Morris* v. *Rosser*, 3 East 15, it is expressly decided, that a prior award concerning land, between the same parties, was conclusive of the title in an action of ejectment. And this decision was made, notwithstanding the old cases cited by counsel, (Abbott, afterwards Lord Tenterden,) in which it was held that the title of land could not be determined by submission and award of arbitrators. The same rule is recognized in numerous American cases. *Shelton* v. *Alcox*, 11 Conn. 240. *Jones* v. *Boston Mill Co.*, 6 Pick. 148. *S. C.*, 4 Ib. 507. 15 Johns. 197. 5 Cow. 183. *Cfrey* v. *Wilcox*, 6 N. H. Rep. 177.

In regard to the practice of the court of chancery in decreeing specific performance of such awards as affected the title to real estate, it is obvious, that, for a very long time, the right to do so has been fully recognized and acted upon. In *Norton* v. *Mascall*, 2 Vern. 24, although the award is treated as having been originally void, yet the simple fact of the orator's having sold land to raise money to perform it on his part is seized hold of as a part performance, and acquiescence in, and ratification of the award by the parties, to enable the court to decree a specific performance. Indeed, all the cases cited for the defendant assume the point, that, if the parties have ratified the award, by promising to perform it after it was made known to them, or by any act equivalent to it, the court of chancery will decree conveyances according to the award. *Milnes* v. *Gery*, 14 Ves. 400, was a bill to carry into effect a submission, where there had been no award, because the two arbitrators did not agree, and could not choose an umpire; and the bill was dismissed, because there had been no award; and no intimation was given of any supposed defect in the power of the court to decree conveyance of real estate according to an award, in a case where one had been properly made. *Blundell* v. *Brettargh*, 17 Ves. 234–241, is a case similar to the last, and here the Lord Chancellor fully recognizes the general powers of the court to decree specific performance of an award for the conveyance of land; and that acquiescence, or confirmation, is only necessary where the award is defective. *Hall* v. *Hardy*, 3 P. Wms. 187, is a full au-

Akely v. Akely.

thority for the decree here asked for, except that in that case the money, which had been decreed to be paid for the conveyance, had been paid and accepted by the defendant. This is no such part performance as would amount to the ratification of a void contract, so as to justify a court of equity in decreeing specific performance;—certainly such is not the rule in regard to mere oral contracts for the conveyance of land, which are not a ground of action under the statute of frauds. The case of *Jones* v. *Boston Mill Co., supra*, is an elaborate and well digested case, and fully in point; and although coming from a quarter where equity cases sometimes meet with a hasty determination, we think it entitled to the highest consideration, as putting this subject on its true grounds.

From all our examination of this subject we feel justified in making the following inferences.

1. What is said in the books about the necessity of such an award being ratified by the parties, in order to justify the courts of equity in decreeing a specific performance, is based solely upon the feudal maxim, that such awards were *in themselves void;* and that, when the reason for that rule ceased, ( which was to prevent collusive conveyances by the tenants, to the detriment of the rights of the landlord,) the rule also ceased.

2. That at present, both in this country and in England, an award of arbitrators in writing and under seal, made in pursuance of a submission under seal, is itself a portion of the contract between the parties, and as much binding in regard to the title of real estate, unless in some way defective, as any other contract under seal, made in the same terms, and signed and sealed by the parties.

3. That the ratification of such an award by the parties is now of no avail, unless to cure some *formal* defect, or as affording an additional reason why the court should decree a specific performance. But such reason would be addressed solely to the discretion of the court, where all such matters ultimately rest.

4. That specific performance may be decreed in this case, as well as in any other case of a contract under seal, embracing the same subject matter, and no more definite than this award.

In support of these propositions I might further cite 2 Story's Eq. 680, and note; *McNeil* v. *Magee,* 5 Mason 244 ; 2 Eq. Dig. 34, pl. 2; and *Bouck* v. *Wilbur*, 4 Johns. Ch. R. 405. In the last

case the learned Chancellor held, not only that the party, in whose favor a conveyance of real estate had been awarded, was entitled to a decree of specific performance, but that a court of chancery would correct any *informality* in the award, and then decree specific performance,—which is going beyond what is asked in the present case.

The decree of the chancellor is reversed, and the case is remanded with a proper mandate allowing a decree for the orator.